NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARIA RODRIGUES,<br><br>               Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>               Defendant. | Civil Action No. 12-5159 (SDW)<br><br>**OPINION**<br><br>September 10, 2013 |

**WIGENTON,** District Judge.

Before this Court is Plaintiff Maria Rodrigues's ("Plaintiff" or "Rodrigues") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"), with respect to Administrative Law Judge James Andres's ("ALJ Andres") denial of Rodrigues's claim for Social Security Disability Insurance Benefits ("SSDI") from October 1, 2005 through July 28, 2007 pursuant to 42 U.S.C. § 405(g).

This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78.  This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g).  Venue is proper under 28 U.S.C. § 1391(b).  For the reasons stated herein, this Court **AFFIRMS** ALJ Andres's decision.

1

**FACTUAL HISTORY**

*Personal and Employment History*

Plaintiff is a 64-year-old woman who lives in Newark, New Jersey. (R. 92.) Plaintiff worked as a registration clerk-translator at a hospital until September 2003.[1] (R. 110-11.) Her duties included answering phones, filing, handling the cash register, registering patients and translating from Portuguese to Spanish. (R. 111.) Plaintiff asserts that she performed this job standing "most of the day" and "had to lift charts." (R. 29.) Plaintiff claims that she stopped working on September 1, 2003 because she had difficulty walking and standing. (Id.) Plaintiff also indicated that her doctor placed her on disability and she was seeing a chiropractor for shoulder deformity. (R. 110.)

Additionally, from 2000 until approximately 2002, Plaintiff worked for Iron Bound Community Corporation. (R. 33, 123.) Plaintiff testified that she would travel in a van every morning visiting daycare centers and she would assist in performing examinations on preschoolers. (R. 33.) Plaintiff testified that she stopped working at this job in September 2002 because she could not get in and out of the bus. (Id.) In particular, Plaintiff stated that she had trouble getting in the bus, could not bend, and could not lift her legs into the bus. (R. 34.)

*Medical History and Treatment*

On October 31, 2005, Plaintiff visited Dr. Lucio A. Cardoso, M.D. ("Dr. Cardoso") complaining of knee pain. (R. 186.) On November 3, 2005, Plaintiff's x-ray result showed "[n]o fracture or dislocation. No evidence of any joint effusion. Minimal arthritic changes are noted

---

[1] It is noted that there are several discrepancies with respect to Plaintiff's employment history. Plaintiff indicated in her SSDI application that she worked as a registration-clerk translator from 1980 to 2003. (R. 111.) However, Plaintiff testified that she worked at this location for "almost 17 years." (R. 36.) On her Work History Report dated May 16, 2007, Plaintiff indicated that she worked at a "Medical Clinic" from 1980 to 1996 or 1997; in 1997, she worked for a few months at St. Barnabas Medical Clinic; and she worked at CVS Pharmacy at an unspecified time. (R. 120, 124-25.)

bilaterally with narrowing of joint space medically bilaterally." (R. 204.) During a follow up appointment on January 23, 2006, Plaintiff reported having body aches; however, her blood work results were normal. (R. 185, 187-90.)

From September 27, 2006 through November 3, 2006, Plaintiff visited Therapy Center at Wilson Towers with complaints of left hip and left foot pain. (R. 219-30, 233.) Plaintiff's treatment consisted primarily of traction, electrical muscle stimulation, and moist heat treatments. (R. 219-30.)

On January 28, 2007, Plaintiff was hospitalized with a primary diagnosis of acute hepatitis and she stayed at the hospital until February 2, 2007. (R. 237.) Plaintiff's final diagnosis consisted of acute hepatitis B, anemia, gout, and coagulopathy secondary to liver disease. (R. 240.) At the time of discharge, Plaintiff was alert, her vitals were stable, and she was instructed to limit sodium in her diet and perform activities as tolerated. (Id.)

On May 7, 2007, Plaintiff was examined by Dr. Maria G. Koliver, M.D. ("Dr. Koliver"). (R. 311-12). Dr. Koliver noted that Plaintiff complained of pain and she diagnosed Plaintiff with cervical radiculopathy, lumbar radiculopathy, and osteoarthritis. (R. 311.) However, Dr. Koliver's notes do not reflect any lab studies or tests to support the diagnoses. (R. 311-12.)

On July 28, 2007, Plaintiff visited Dr. James Santiago, M.D. ("Dr. Santiago") complaining of low back pain and she rated the pain a ten out of ten, with ten being the worst. (R. 282.) Dr. Santiago reported the following findings: severe and intense pain and tenderness upon palpation of the Thoracic and Lumbar spinal region; multiple vertebral subluxations with spasm, hypomobility and end-point tenderness in the cervical, thoracic, lumbar, sacroiliac, and pelvic regions; painful and restricted Lumbar ranges-of-motion in all Thoracolumbar planes of motion; and paravertebral myofascial trigger points and muscle spasms in some muscles. (Id.)

Dr. Santiago suggested that Plaintiff return for treatment five times per week in order to reduce the pain by twenty-five percent, increase range of motion by twenty percent, and improve muscle strength and symmetry. (Id.)

On September 14, 2007, Plaintiff visited Dr. Santiago with complaints of low back pain and she rated the pain a six out of ten, with ten being the worst. (R. 283.) Plaintiff also complained "of pain radiating to bilateral feet described as a stabbing pain [eight out of ten]." (Id.) Plaintiff had difficulty sitting or standing for prolonged periods of time and difficulty sleeping. (Id.) Plaintiff reported that she was taking pain medication. (R. 283.) During the visit, Plaintiff expressed that she wanted to apply for disability. (Id.) Plaintiff underwent "[c]hiropractic adjustments [] to hypomobile subluxations of the cervical, thoracic, lumbar, pelvic and sacral areas of the spine." (Id.) Dr. Santiago recommended that Plaintiff return for treatment three times per week. (R. 284.)

On October 25, 2007, Dr. Alexander Hoffman, M.D. ("Dr. Hoffman") examined Plaintiff and noted that she has "a long, long history of what she describes as arthritis all over her body[,] taking a variety of medications[,] and seeing a chiropractor on a regular basis." (R. 288.) Dr. Hoffman indicated that Plaintiff complained of "low back pain, pain in both lower extremities, [] pain in her hands, her shoulders as well as her neck." (R. 286.)

On September 23, 2008, State Agency physician Dr. Mary McLarnon ("Dr. McLarnon") reviewed Plaintiff's physical residual functional capacity ("RFC") and found postural, manipulative, communicative, and environmental limitations. (R. 338-39.) Dr. McLarnon did not find any exertional limitations. (R. 338.) On October 6, 2008, Dr. McLarnon again reviewed the record and reported that the "evidence as a whole supports a partially favorable determination based on a musculoskeletal condition with documented exacerbation [July 28, 2007], restricting

4

claimant to significantly less than a full range of sedentary exertion. This precludes past work and vocational outlook is adverse." (R. 341.)

**PROCEDURAL HISTORY**

On April 13, 2007, Plaintiff filed an application for SSDI Benefits alleging disability beginning on September 1, 2003.[2] (R. 92-99.) Plaintiff then amended her alleged date of onset to October 1, 2005. (R. 22.) It was determined that Plaintiff was disabled as of July 28, 2007 and this was affirmed on reconsideration. (R. 11, 67-70, 340-41.) Plaintiff requested a hearing before an ALJ to appeal the later onset date, which was held on April 7, 2010. (R. 17-45.) On November 19, 2010, ALJ Andres issued a partially favorable decision finding that Plaintiff was disabled as of July 28, 2007, but not before that date. (R. 7-16.) On June 14, 2012, the Appeals Council denied Plaintiff's request for review and Plaintiff subsequently filed the instant appeal. (R. 1-5.)

**LEGAL STANDARD**

In social security appeals, this Court has plenary review of the legal issues decided by the Commissioner. See Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. See Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988) (internal quotations omitted).

Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla'; it is 'such relevant evidence as a reasonable mind might accept as adequate to support

---

[2] Both Plaintiff's Brief and ALJ Andres's decision indicate that Plaintiff filed her application for SSDI benefits on March 28, 2007. (Pl. Br. 1; R. 11.) However, the record reflects that Plaintiff filed her application on April 13, 2007. (R. 92.)

a conclusion.'" Bailey v. Comm'r of Soc. Sec., 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" Bailey, 354 F. App'x. at 616 (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" Daniels v. Astrue, No. 08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." Cruz v. Comm'r of Soc. Sec., 244 F. App'x. 475, 479 (3d Cir. 2007) (citing Hartranft, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. See Scott v. Astrue, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." Cruz, 244 F. App'x. at 479 (citing Hargenrader v. Califano, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "'where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits.'" Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979) (quoting Saldana v. Weinberger, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." Podedworny v. Harris, 745 F.2d 210, 221-22 (3d Cir. 1984) (citations omitted).

**DISCUSSION**

An individual is considered disabled under the Social Security Act if she is unable to "engage in any substantial gainful activity ("SGA") by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The physical or mental impairment must be severe enough to render the individual "not only unable to do [her] previous work but [unable] considering [her] age, education, and work experience, [to] engage in any other kind of substantial gainful work which exists in the national economy." § 423(d)(2)(A). Subjective complaints of pain alone, cannot establish disability. See § 423(d)(5)(A). Instead, a claimant must show that the "medical signs and findings" related to her ailment have been "established by medically accepted clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged." Id. The Social Security Administration (the "SSA") utilizes a five-step sequential analysis to determine disability. See Cruz, 244 Fed. App'x. at 480 (citing 20 C.F.R. § 404.1520 (a)(4)(i)-(v) (2011)). "A negative conclusion at steps one, two, four or five precludes a finding of disability." Id. However, "[a]n affirmative answer at steps one, two or four leads to the next step. An affirmative answer at steps three or five results in a finding of disability." Id. (quoting § 404.1520 (a)(4)(i)-(v)) (internal quotation marks omitted). The United States Supreme Court describes the evaluation process as follows:

> The first two steps involve threshold determinations that the claimant is not presently working and has an impairment which is of the required duration and which significantly limits [her] ability to work. In the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work. If the claimant's impairment

> matches or is "equal" to one of the listed impairments, [s]he qualifies for benefits without further inquiry. If the claimant cannot qualify under the listings, the analysis proceeds to the fourth and fifth steps. At these steps, the inquiry is whether the claimant can do [her] own past work or any other work that exists in the national economy, in view of [her] age, education, and work experience. If the claimant cannot do [her] past work or other work, [s]he qualifies for benefits.

Sullivan v. Zebley, 493 U.S. 521, 525-26 (1990) (citations omitted); see also 20 C.F.R. § 404.1520(a)(4)(i)-(v). The burden of persuasion lies with the claimant in the first four steps. See Malloy v. Comm'r of Soc. Sec., 306 Fed. App'x. 761, 763 (3d Cir. 2009). Once the claimant is able to show that the impairment prevents her from "performing [her] . . . past work[,] the burden shift[s] to the Commissioner[] to [demonstrate] that the claimant still retains a residual functional capacity to perform some alternative, substantial, gainful activity present in the national economy." Id. (citing Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987)).

In the instant matter, at step one, ALJ Andres found that Plaintiff had not engaged in SGA since her alleged onset date of October 1, 2005. (R. 13.) At step two, ALJ Andres found that Plaintiff did not suffer from any severe impairments before July 28, 2007. (R. 14.) However, ALJ Andres concluded that Plaintiff suffered from radiculopathy, depression, and obesity as of July 28, 2007. (R. 15.) At step three, ALJ Andres found that since July 28, 2007, Plaintiff did not have impairments that matched or were equivalent to a listed impairment. (R. 15.) Additionally, ALJ Andres found that since July 28, 2007, Plaintiff had an RFC to perform less than a full range of sedentary work. (R. 15.) At step four, ALJ Andres found that since July 28, 2007, Plaintiff has been unable to perform any past relevant work. (R. 16.) At step five, ALJ Andres found that since July 28, 2007, there are no jobs that exist in significant numbers in the national economy that Plaintiff could perform. (R. 16.) Accordingly, ALJ Andres concluded that Plaintiff "was not disabled prior to July 28, 2007, (20 CFR 404.1520(c)) but became

disabled on that date and has continued to be disabled through the date of this decision, [November 19, 2010]." (R. 16.)

The primary issue in this case is whether the Commissioner's decision is supported by substantial evidence. Specifically, Plaintiff raises two issues: (1) at step two, ALJ Andres failed to find that Plaintiff suffered from "severe" impairments before July 28, 2007; and (2) ALJ Andres failed to obtain the testimony of a medical expert to determine the onset date of Plaintiff's disability. (See Pl.'s Br. 11-12.)

### A. Whether Plaintiff Has A "Severe" Impairment or Combination of Impairments Affecting Her Ability To Do Basic Work Activities

At step two, the ALJ must determine whether the claimant has a medically determinable severe impairment or a severe combination of impairments. See 20 C.F.R. § 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. See 20 C.F.R. § 416.921. An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. See id. If the claimant does not have a severe impairment or severe combination of impairments, she is not disabled. See id. If the claimant has a severe impairment or severe combination of impairments, the analysis proceeds to the third step. See 20 C.F.R. § 416.920(a)(4)(ii).

### 1. ALJ Andres's Assessment of Plaintiff's Possible Severe Impairments

In the instant matter, ALJ Andres found that Plaintiff did not suffer from any severe impairments from October 1, 2005 through July 28, 2007 (R. 13-15.) Thus, ALJ Andres concluded that Plaintiff was not disabled during this time. (Id.)

9

Plaintiff argues that although she was found to suffer severe impairments such as obesity, depression, cervical radiculopathy, and back pain as of July 28, 2007, ALJ Andres erred in failing to find that Plaintiff suffered from these severe impairments before July 28, 2007. (Pl.'s Br. 10, 17.) Specifically, Plaintiff argues that "[she] suffered no traumatic injury on July 28, 2007 and could not have gained 70 pounds overnight." (Pl.'s Br. 10.) Plaintiff emphasizes that her obesity was considered "severe" on and after July 28, 2007, but not before this date. (Pl.'s Br. 17, 21.) Moreover, Plaintiff argues that her medical records support that she suffered from these impairments before July 28, 2007. (Pl.'s Br. 25-26.) Plaintiff also argues that ALJ Andres failed to mention her January 2007 hospitalization for acute hepatitis, liver dysfunction, anemia, and gout. (R. 10.)

This Court does not find Plaintiff's arguments persuasive. Here, ALJ Andres concluded that "[p]rior to July 28, 2007, the date the claimant became disabled, there were no medical signs or laboratory findings to substantiate the existence of a medically determinable severe impairment." (R. 13.) In support of this finding, ALJ Andres noted that Plaintiff alleged pain since 2005, "but failed to substantiate her allegations with any supporting evidence prior to July 2007." (R. 14.) Importantly, at step two, Plaintiff bears the burden of establishing evidence of her impairment and its effect in limiting her ability to work. See 42 U.S.C. § 423(d)(5)(A). Based on the record, this Court finds that Plaintiff did not meet this burden. As ALJ Andres noted, Plaintiff did not furnish evidence of medical treatment between October 2005 and July 2007 except for a few instances. (R. 14.)

ALJ Andres discussed Plaintiff's medical records in depth and concluded that "[t]here is no evidence of severe and disabling impairments prior to [July 28, 2007]." (R. 14.) For instance, ALJ Andres took into consideration Plaintiff's treatment of myalgias in 2001; knee pain

in 2005; diagnosis of cervical radiculopathy, lumbar radiculopathy and osteoarthritis in May 2007 with Dr. Koliver; and examination in October 2007 with Dr. Hoffman. (R. 15.) Moreover, although Plaintiff points to her January 2007 hospitalization as evidence of a severe impairment, the record does not show that this condition would last for a significant period of time. ALJ Andres provided a sufficient basis for his conclusions that Plaintiff's impairments—either singly or in combination—were not severe before July 28, 2007. Accordingly, this Court finds that ALJ Andres appropriately assessed the evidence and correctly concluded that Plaintiff did not suffer from a severe impairment before July 28, 2007.

### 2. Whether A Medical Expert Was Necessary To Consider Plaintiff's Impairments Prior to July 28, 2007

Plaintiff argues that medical expert testimony was required to determine the onset of her disability before July 28, 2007. (Pl.'s Br. 25-26.) Plaintiff asserts that her obesity and radiculopathies were diagnosed before July 28, 2007 and these are considered "chronic, long-standing and 'slowly progressing'" conditions. (Pl.'s Br. 25.) Plaintiff argues that ALJ Andres's decision did not "render a medical judgment as to when any or all of these conditions became severe/disabling." (Id.)

In the instant matter, this Court finds that it was unnecessary for ALJ Andres to obtain a medical expert to testify regarding Plaintiff's disability onset date. First, case law indicates "an ALJ is not required under the Social Security regulations to seek out medical expert testimony. Instead, the regulations set out a permissive standard: An ALJ '*may* also ask for and consider opinions from medical experts on the nature and severity' of a claimant's impairments." Jakubowski v. Comm'r of Soc. Sec., 215 F. App'x 104, 107 (3d Cir. 2007) (citing 20 C.F.R. § 404.1527(f)(2)(iii)). Additionally, a State Agency doctor reviewed the record and made the determination that the evidence demonstrated Plaintiff's exacerbated musculosketal condition on

11

July 28, 2007. (R. 341.) Under 20 C.F.R. § 404.1527(f), the opinion of the State Agency doctor constitutes expert opinion evidence. Furthermore, ALJ Andres cited to specific medical evidence to support his finding that Plaintiff's impairments were not severe before July 28, 2007. (See R. 14-15.) Thus, this Court finds that ALJ Andres appropriately considered the information regarding the onset of Plaintiff's disability and did not err in obtaining a medical expert for this purpose.

**CONCLUSION**

For the foregoing reasons, this Court **AFFIRMS** ALJ Andres's decision.

s/Susan D. Wigenton, U.S.D.J.